UNITED STATES v. GREENE et al.

(District Court, S. D. Georgia, E. D. January 26, 1906.)

CONSPIRACY—EVIDENCE—LETTERS BETWEEN ALLEGED CO-CONSPIRATORS.

On the trial of defendants contractors charged with conspiracy with a codefendant, who was an engineer officer in charge of government work, to defraud the United States with respect to such work, telegrams, and letters sent by such engineer to one of the defendants on trial prior to the conspiracy charged; but at a time when defendants were connected with the work, which informed such defendant of the publication of an affidavit made by an inspector on the work, charging such defendant with an attempt to bribe the affiant, and with stating that he had power to cause affiant's removal by the engineer, and which telegrams and letters urged such defendant to send a statement and an affidavit dictated therein in denial, are admissible in evidence for the purpose of showing the attitude of the engineer in the matter, and such joint action as to indicate an improper understanding and relation between the defendants on trial and the engineer officer, where it is also proposed to follow it by other evidence

showing a· continuance of such intimacy and relation to the time of the conspiracy charged.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Conspiracy, §§ 100-102.]

On Objection of Defendants to Evidence Offered.
See 115 Fed. 343.

Marion Erwin, U. S. Atty., Samuel B. Adams and Thomas F. Barr, Sp. Assts. to U. S. Atty., Alexander Akerman, Asst. U. S. Atty. Peter W. Meldrim and William W. Osborne, for defendants.

SPEER, District Judge. The following telegrams and letters are offered by the government:

"Night Telegram, Savannah, Ga., June 6, 1889.

"Capt. B. D. Greene, No. 2 E. 15th St., New York City:   Gen. Alexander desires me to ask you to telegraph to the 'Morning News,' at once, the following statement over your signature:

"The affidavit of Mr. Curtis so far as it alleges an attempt upon my part to bribe him and so far as it relates to statements said to have been made by me, reflecting in any manner whatever upon Lieut. Carter, is false in every particular.   An affidavit to this effect will follow in due time.

"O. M. Carter. C."

"Night Telegram, Savannah, Ga. June 6, 1889.

"Capt. B. D. Greene, No. 2 E. 15th St., New York, N. Y.:   The affidavit of Curtis to which my telegram refers is as follows:

"'In February B. D. Greene renewed the above proposition of Gaynor, stating that he would add to my salary five hundred dollars per month, and would get Lieut. Carter to increase said salary—He said it was in his power to secure my appointment, and that he had also the power to have Lieut. Carter remove any obnoxious inspector, instancing Inspector G. W. Brown, who was removed to Fernandina in (1886) eighteen eighty six, and stating that Brown's successor was worth to him sixty (60) dollars per day.'

"O. M. Carter. C."

"June 6, 1889.

"Dear Greene: It is absolutely necessary that you send affidavit as I requested.   I had a long talk with Alexander & other of my friends & they all agreed that the first thing to be done was for you & Gaynor to assert under the sanction of an oath (as Curtis has stated his story), that so far as it relates to you it is unqualifiedly false.   Things have been worked up to such an extent that a letter asking for a suspension of judgment will hurt us both irremediably.   Alexander & Mackall suggest the following affidavit—

"'Before me, &c. personally appeared B. D. G. who, &c., deposes and says:

"'Certain sworn & other statements of a Mr. W. R. Curtis reflecting upon me have been brought to my attention & I desire to solemnly assert—

"'That I never approached Mr. W. R. Curtis with a bribe or other inducement to do wrong; that I did not state that I could have had power to secure his appointment as inspector; that I did not state that I had the power to have Lieut. Carter remove obnoxious inspectors, or that I had Mr. G. W. Brown sent to Fernandina in 1886 or that Mr. Brown's successor was worth to me $60 per day.   The sworn statement of Mr. W. R. Curtis dated May 31, 1889, is, so far as it relates to me or to statements attributed to me that reflect in any manner whatever upon Lieut. Carter, false in every particular.

"'Sworn & Subscribed to &c.'

"You may not think this necessary just now, but it is true & due me & I am here & know the situation & you must do it at once.   You ought to come here.   Do not fail to insert in the affidavit each & every statement

that I have made. I asked John to telegraph you to come here. Every one thinks the affidavit ought to be published at once, other things can follow. John's affidavit, so far as it relates to him, will be ready.

"I copy this sheet as I wish to remember form of affidavit Gen. A. prepared.

"Truly,                                                                        O. M. C."

A notice to produce these telegrams and this letter had been duly served on the defendant Greene. His counsel respond that the letters are not in his possession, custody, or control, and since the letter book taken from Carter's file, to which reference has been made. shows distinct copies proven to be in his handwriting, they may be admitted as secondary evidence provided that they are per se competent and material. The objection is raised that the only effect of these letters is to call attention to charges previously made against Carter by one Curtis who was an inspector on the works with regard to which the alleged conspiracy in this case is charged in these indictments; that this would be injurious to him and to the prisoners, and should not be offered to affect the accused or either of them. The reply of the government is that these letters show an attitude on the part of Carter toward Greene and Gaynor which indicated great intimacy, and which also exhibited on his part, not only a disregard for his duty as engineer officer in charge of those works, but an effort to defeat in its inception an investigation which involved charges of a serious character. When the evidence was first offered it had not been disclosed by the District Attorney that Curtis was such inspector, and the evidence offered seemed to be res inter alios acta, and to have no relevancy to the case on trial. When, however, it was disclosed that Curtis was an inspector, another aspect of these letters is presented. It appears from Carter's statement in the night telegram of June 6th that Inspector Curtis charged that Greene renewed a proposition of Gaynor to increase the salary of the inspector to $500 a month; that he would get Lieut. Carter to increase the salary; that it was in Greene's power to secure Curtis' appointment; that it was in his power also to have Carter remove obnoxious inspectors. An illustration of this was the case of inspector G. W. Brown who was removed to Fernandina in 1886, and that the inspector who was Brown's successor was worth to Greene $60 per day. This charge appears to have been made in the form of an affidavit by inspector Curtis, who, defendants' counsel states, had been removed. It does not appear as yet whether he was discharged before or after the charge was made. Carter states in another telegram of the same date that Gen. Alexander wished Carter to ask Greene to telegraph the Savannah Morning News at once to the effect that Curtis' statement of the alleged bribe was false, and that an affidavit would follow in due time. The letter of June 6, 1889, purports to emphasize in the strongest way that Greene should send such an affidavit from New York to Savannah. Carter suggests the telegram which Greene should send and also the form of the affidavit which he asks Greene to make. It purports to urge Greene to come to Savannah, urges him to insert in the affidavit each statement that Carter had made, informs him that he asked John (presumably John F. Gaynor, the other de-

fendant) to telegraph Greene to come here, and informs him that John's affidavit will be ready. Now, if this letter was offered for the purpose of showing that Carter had been guilty of improper conduct and investigated at another time, it might not be admissible on the hearing of this charge. The jury will be carefully cautioned that they ought not to permit the affidavit of Curtis to affect them in this inquiry; for in that sense it does not seem to the court that the Curtis charge or inquiry would be material here. It is usually not competent except in a certain class of crimes to offer evidence to show that the accused has been guilty of other, but similar, offenses. There are frequent exceptions, however, to this rule, but this does not seem to be a case for the operation of such exception.

We must consider Carter's specific attitude with relation to this case, and the purpose for which these letters and telegrams were offered. Carter was the engineer in charge, whose duty it was to see to it that the contractors should not bribe or attempt to bribe the inspectors. When Curtis made such a published charge, instead of attempting to induce a denial from Greene and Gaynor, it was his duty at once to institute an investigation, and from a position as representative of the government, and antagonistic to Greene and Gaynor, should have urged such an investigation to the uttermost. So, too, with regard to the charge made by Curtis that Greene offered to get Carter to increase the inspector's salary, or the alternative proposition that Greene had the power to have Carter remove any obnoxious inspector. This was a reflection on Carter, in his position as engineer officer of the government, quite as serious as the charge against Greene of attempted bribery of the inspector. Instead of then co-operating with Greene and Gaynor to induce a denial of these charges by them, it was his duty, not only to the government, but to his own position as an officer, to court an immediate and rigorous investigation. If the letters have the effect as evidence, which the government insists they should have, Carter did nothing of this kind. Instead of acting for the government which was his first duty, he acted in behalf of these contractors against whom the government inspector brought charges of the most serious character. Instead of demanding an investigation of the attempt to smirch his own character and conduct, if the letter is accepted as true, he called upon the contractors with whom he should have dealt at arms length to come to his aid with their denials and affidavits.

The object of this evidence is to show such joint action and mutual support on the part of Carter (who ought always to have represented the government) and the contractors whose interests were to the contrary, as would indicate an improper understanding and improper relations between these parties. The District Attorney states in his place that he purposes to show by other evidence that this joint and mutual support ripened and fructified into the conspiracy with which the accused now stand charged. Whether he succeeds in doing this or not, if it be true, as appears from the face of these letters and telegrams that Carter felt at liberty not only to call upon Greene and Gaynor, or either of them, for affidavits and telegrams denying an

injurious charge which Curtis made, but that the relations between Carter and Greene were so close that he felt at liberty to dictate the telegram and the affidavits he wished Greene to make, it may tend to show a degree of intimacy between the alleged co-conspirators which is always material in evidence on charges of conspiracy or criminal joint action. Of course, the letters and telegrams are admitted because of what appears on the face of the papers taken in connection with the statements of the supplemental proof to be offered by the District Attorney.

For these reasons, the evidence objected to is held admissible.